**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **JOHN S. MARIANO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 04-0776-WS-B** |
| | ) | |
| **JOHN E. POTTER, etc.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter is before the Court on the defendant's motion for summary judgment.  (Doc. 32).  The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 32-33, 36-37, 40-41), and the motion is ripe for resolution.  After carefully considering the foregoing materials, the Court concludes that the motion for summary judgment is due to be granted in part and denied in part.

**BACKGROUND**

The plaintiff in his complaint asserts nine claims, all arising under Title VII and the Age Discrimination in Employment Act ("ADEA"):

- that he was denied a detail as an acting supervisor (see Part IV);

- that custodial work assignments were not equitably distributed (see Part V);

- that he was not assigned overtime (see Part II);

- that he was denied a detail as a maintenance support clerk (see Part III);

- that he was denied a detail as a postal systems coordinator (see Part VI);

- that he experienced harassment in the workplace (see Part IX);

- that he was not promoted to maintenance support clerk (see Part I);

- that he was not detailed to other maintenance positions (see Part VII);

- that he was again not assigned overtime (see Part VIII).

(Doc. 1, ¶¶ 9-10).  The plaintiff alleges that the first five of these unfavorable actions were based on race, sex and age; that the next two were based on national origin, sex and age; and that the

final two were based on national origin, sex, age and retaliation.  (*Id*.).

## DETERMINATIONS OF UNCONTROVERTED FACT

The plaintiff was hired as a PS-3 custodian/laborer within the maintenance department in September 1999.  He requested transfer to a PS-5 letter carrier position, which request was granted in September 2000.  Effective November 18, 2000, injured employee Robert Kearse was placed in a position in maintenance support.  In December 2000, the incumbent PS-6 maintenance support person resigned, and PS-5 maintenance support clerk Joyce Major was selected to assume the PS-6 position, effective December 16, 2000.  On December 13, 2000, the plaintiff wrote the postmaster requesting his assistance in obtaining a transfer back to the maintenance department.  On the same date, maintenance manager David Lehman wrote a union representative that Major's position would not be filled.  On December 20, 2000, Lehman confirmed he had a vacant PS-3 custodian/laborer position.  The plaintiff transferred to that position effective December 30, 2000.

## CONCLUSIONS OF LAW

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), 29 U.S.C. § 626(c)(1), and 42 U.S.C. § 2000e-5(f)(3).  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 2000e-5(f)(3).

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  Once the moving party has satisfied its responsibility, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact.  *Id.*  "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment."  *Id.*  (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986))(footnote omitted).

"When the *moving* party has the burden of proof at trial, that party must show

-2-

*affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. [citation omitted] In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991)(en banc) (emphasis in original); *accord Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Id*. at 1116.

The parties have submitted several large exhibits while citing only to small portions thereof.  A party may not, by the simple expedient of dumping a mass of evidentiary material into the record, shift to the Court the burden of identifying evidence supporting his position.[1] Similarly, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp*., 43 F.3d 587, 599 (11th Cir. 1995).  Accordingly, the Court's review is limited to those portions of the exhibits to which the parties have specifically cited.  The Court's review is similarly limited to those legal arguments expressly advanced by the parties.

"All personnel actions affecting employees ... in the United States Postal Service ... shall be made free from any discrimination based on race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-16(a).  Likewise, "[a]ll personnel actions affecting employees ... who are at least 40 years of age ... in the United States Postal Service ... shall be made free from any discrimination based on age."  29 U.S.C. § 633a(a).  While neither section purports to establish retaliation as an unlawful employment practice, the Eleventh Circuit has routinely addressed

---

[1] *E.g., Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 672 (10th Cir. 1998)("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so."); *accord Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989); *Lawson v. Sheriff of Tippecanoe County*, 725 F.2d 1136, 1139 (7th Cir. 1984); *Karlozian v. Clovis Unified School District*, 2001 WL 488880 at *1 (9th Cir. 2001); *see also* Local Rule 7.2.

such claims by federal employees as analogs of the express retaliation causes of action available to private employees.[2]

Because the plaintiff does not rely on direct evidence of discrimination, the shifting burden appropriate for cases resting on circumstantial evidence applies.  In Title VII cases alleging discrimination, the burden is first on the plaintiff to establish a prima facie case.  If he succeeds, the defendant must meet his burden of producing evidence of one or more legitimate, nondiscriminatory reasons for the adverse employment action.  The burden then shifts back to the plaintiff to show that the defendant's proffered reasons are a mere pretext for illegal discrimination.  *E.g., Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1228 (11th Cir. 2002).  The same burden-shifting paradigm applies to cases alleging discrimination under the ADEA, *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000)(en banc), and to cases alleging retaliation under either statute.  *Sullivan v. National Railroad Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999)(Title VII); *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993)(ADEA).

## I.  Failure to Promote to Maintenance Support Clerk.[3]

The defendant presents the following arguments: (1) that the plaintiff did not timely raise this claim at the administrative level; (2) that he cannot establish a prima facie case of discrimination; and (3) that he has no evidence of pretext with which to counter the defendant's articulated legitimate, nondiscriminatory reason.  (Doc. 32 at 18-19; Doc. 41 at 2-4).  The Court addresses these arguments in turn.

### A.  Statute of Limitations.

"Before an aggrieved employee may seek relief through the filing of a civil action in federal court, § [2000e-16(c)] requires that he or she must first seek relief in the agency that has

---

[2]*See* 29 U.S.C. § 623(d); 42 U.S.C. § 2000e-3(a).

[3]The parties sometimes refer to this position as "maintenance control clerk."  To the extent the terms denote different positions, the parties have not identified any relevant distinction, and the Court is left to assume there is none.

allegedly engaged in discrimination." *Grier v. Secretary of Army*, 799 F.2d 721, 724 (11th Cir. 1986). The parties assume that the same requirement obtains for a party invoking administrative procedures under the ADEA, and the Court accordingly indulges the same assumption.[4]

"Aggrieved persons who believe they have been discriminated against on the basis of race, ... sex, national origin [or] age ... must consult a Counselor prior to filing a complaint [with the employing agency] in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a). "An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." *Id.* § 1614.105(a)(1). "This 45-day time requirement functions as a statute of limitations for filing suit." *Moss v. England*, 143 Fed. Appx. 733, 740 (9th Cir. 2005) (internal quotes omitted).[5] The Eleventh Circuit concurs. *Robinson v. Jojanns*, 147 Fed. Appx. 922, 924 (11th Cir. 2005).

The defendant argues that, because the plaintiff first contacted an EEO counselor on January 17, 2002, he cannot challenge in this lawsuit any employment action occurring before December 3, 2001, forty-five days earlier. (Doc. 32 at 8). The defendant argues further that the failure to promote the plaintiff occurred on December 13, 2000, when Lehman notified the union that the maintenance support position to be vacated by Major would not be filled. (Doc. 41 at 1-2). The defendant continues that the plaintiff must have known of the decision not to fill the position no later than December 30, 2000, when his transfer back into the maintenance department became official. Thus, he concludes, the plaintiff was required to contact an EEO

---

[4]Section 2000e-16(c) expressly contemplates mandatory initial resort to the employing agency, and the parallel provision of the ADEA at least suggests the same. *See* 29 U.S.C. § 633a(b)(the heads of covered entities must comply with EEOC rules and regulations, "which shall include a provision that an employee ... shall be notified of any final action taken on any complaint of discrimination filed by him thereunder"); *see also Stevens v. Department of Treasury*, 500 U.S. 1, 5-6 (1991)(while he may "invoke the EEOC's administrative process, ... [a] federal employee complaining of age discrimination ... does not have to seek relief from his employing agency or the EEOC at all").

[5]*Accord Mora v. Ashcroft*, 142 Fed. Appx. 206, 207 (5th Cir. 2005); *Webster v. Johnson*, 126 Fed. Appx. 583, 586-87 (4th Cir. 2005); *Horton v. Potter*, 369 F.3d 906, 910 (6th Cir. 2004); *Stewart v. Ashcroft*, 352 F.3d 422, 425 (D.C. Cir. 2003); *Sutton v. Rumsfeld*, 343 F.3d 948, 949 (8th Cir. 2003); *Thompson v. White*, 67 Fed. Appx. 355, 356 (7th Cir. 2003).

counselor no later than February 14, 2001.  (*Id.* at 2-3).

The threshold difficulty with the defendant's argument is that it was not raised until his reply brief.  Numerous district courts, drawing on the parallel appellate rule, have concluded that they ordinarily should not consider an argument presented for the first time in a reply brief.[6] This Court has embraced the same view.  *McCulley v. Allstates Technical Services*, 2005 WL 1475314 at *6 (S.D. Ala. 2005).[7]

Nor is it clear that summary judgment could be granted based on the defendant's argument even were the Court to reach it.  The defendant assumes that the 45-day period is triggered by the plaintiff's knowledge of the unfavorable decision, but "under equitable modification, the applicable limitations period d[oes] not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his ... rights."  *Jones v. Dillard's, Inc.*, 331 F.3d 1259, 1264 (11th Cir. 2003) (internal quotes omitted).  In particular, the plaintiff must not only know of the discriminatory act (here, the failure to promote) but must know or be charged with knowledge of sufficient facts

---

[6]*E.g., Occhionero v. City of Fresno*, 2006 WL 547977 at *9 (E.D. Cal. 2006); *Trudeau v. Lanoue*, 2006 WL 516579 at *2 (N.D. Ill. 2006); *Brennan v. AT&T Corp.*, 2006 WL 306755 at *8 (S.D. Ill. 2006); *Mondaine v. American General Drug Stores, Inc.*, 408 F. Supp. 2d 1169, 1202-03 (D. Kan. 2006); *Sweet v. Pfizer*, 232 F.R.D. 360, 369 (C.D. Cal. 2005); *Wolotka v. School Town of Munster*, 399 F. Supp. 2d 885, 901 (N.D. Ind. 2005); *Percefull v. Claybaker*, 2005 WL 3805975 at *1 n.1 (W.D. Ark. 2005); *Rowley v. City of New York*, 2005 WL 2429514 at *5 (S.D.N.Y. 2005); *Staton Holdings, Inc. v. First Data Corp.*, 2005 WL 2219249 at *4 n.1 (N.D. Tex. 2005); *Henderson v. Freightliner LLC*, 2005 WL 775929 at *3 n.1 (S.D. Ind. 2005); *Gamesa Eolica, S.A. v. General Electric Co.*, 2005 WL 318854 at *2 (W.D. Wis. 2005); *Serpa v. SBC Telecommunications, Inc.*, 2004 WL 2002444 at *5 n.4 (N.D. Cal. 2004); *Flamenbaum v. Orient Lines, Inc.*, 2004 WL 1773207 at *14 (S.D. Fla. 2004); *Nebraska Plastics, Inc. v. Holland Colors America, Inc.*, 2003 WL 22519410 at *14 (D. Neb. 2003); *Cuba-Diaz v. Town of Windham*, 274 F. Supp. 2d 221, 230 n.8 (D. Conn. 2003); *Rockwell Technologies, LLC v. Spectra-Physics Lasers, Inc.*, 2002 WL 531555 at *3 (D. Del. 2002).

[7]The defendant vaguely suggests that his argument was triggered by the plaintiff's reference in his brief to the timing of the vacancy, Lehman's decision not to fill it, and the plaintiff's return to the maintenance department.  (Doc. 41 at 2-3).  The defendant not only was aware of these facts when filing his principal brief, he cited to them therein.  (Doc. 32 at 4-5, ¶¶ 10-12).  The plaintiff's echo of the same facts in his brief does not excuse the defendant's failure to challenge timeliness in his opening brief.

to support a conclusion that the employer's facially neutral explanation for its decision is pretext for unlawful discrimination. *Id*. at 1265. A "mere suspicion" of discrimination will not support pretext and thus will not preclude application of equitable tolling. *Id*. (internal quotes omitted).

"The prerequisite of timely contact with an EEO counselor is not jurisdictional, and is subject to waiver, estoppel and equitable tolling." *Robinson v. Jojanns*, 147 Fed. Appx. at 924. There is thus no reason to believe that the ground of equitable tolling discussed in *Jones* and other cases does not extend to the 45-day limitations period of Section 1614.105(a). The defendant, however, has not offered to explain in his reply brief why equitable tolling would not apply in this case, and an excellent argument can be made on this record that it would indeed apply. The defendant's facially neutral explanation to the union for not filling the vacancy was "hiring constraints" that would continue "until District consents to let us increase our complement." (Doc. 37, Exhibit 6). As discussed in Part I.C, the defendant's explanation is thus that Majors' position could not be filled because the allotted complement of positions was exhausted. It would appear that, in order to cut off equitable tolling by providing the plaintiff sufficient information to support a conclusion that this facially neutral explanation was pretextual, the plaintiff would have to have actual or constructive knowledge of at least the following: (1) the allotted complement; (2) that Kearse was not assigned one of the positions within that complement but was assigned to a newly created, additional position; (3) that the defendant was prevented by the collective bargaining agreement from leaving Majors' vacated position unfilled unless certain conditions existed and certain procedures followed; and (4) that these conditions and/or procedures were not satisfied. The defendant has identified no evidence that the plaintiff was or should have been aware of these matters before December 3, 2001. Indeed, it appears that not even the union realized the employer's explanation was questionable until at least 2003. (Doc. 36 at 5, ¶ 25; Doc. 37, Exhibit 7 at 5; *id*., Exhibit 8).[8]

In short, on this record and argument the plaintiff's claim is not barred due to his failure to contact an EEO counselor within 45 days after he learned that the vacant maintenance support

---

[8]Equitable tolling under *Jones* may also be cut off if the plaintiff learns that the position has gone to one not in his protected category. 331 F.3d at 1265, 1266. Here, however, the maintenance support clerk position was still vacant when the plaintiff contacted an EEO counselor.

clerk position would not be filled.

### B.  Prima Facie Case.

The defendant does not challenge the plaintiff's ability to establish a jury issue as to the first three elements of his prima facie case, which the defendant identifies as: (1) membership in a protected category; (2) qualification for, and application for, promotion; and (3) rejection for the position.  (Doc. 32 at 18).  As to the fourth element, the defendant assumes there is but a single formulation and that it requires that someone else, outside the plaintiff's protected class, be promoted to the position.  (*Id*.).[9]  The Eleventh Circuit, however, has "repeatedly emphasized that the requisite showings that make up a prima facie case are not meant to be rigid or inflexible."  *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1268 (11th Cir. 1999).  Thus, for example, a prima facie case can be made out despite the employer's failure to fill the position if, following the plaintiff's rejection, "'the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.'"  *Walker v. Mortham*, 158 F.3d 1177, 1186 (11th Cir. 1998)(quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

More generally, "[i]n cases where the evidence does not fit neatly into the classic prima facie case formula, ... we have stated that a prima facie case of disparate treatment can be established by any proof of actions taken by an employer from which we infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations."  *Schoenfeld v. Babbitt*, 168 F.3d at 1268 (internal quotes omitted).  The issue, then, is whether the circumstances of this case, which do not fit the classic formula for the fourth element of the prima facie case, nevertheless satisfy the prima facie case because they render it more likely than not that the employer relied on impermissible considerations of national origin, sex and/or age.

In *Alexander v. Chattahoochee Valley Community College*, 325 F. Supp. 2d 1274 (M.D. Ala. 2004), a screening committee forwarded the decision maker three applications, all from black applicants.  The decision maker then decided not to fill the position.  Judge Thompson

---

[9]This is indeed an acceptable formulation of the fourth element.  *E.g., Wilson v. B/E Aerospace, Inc*., 376 F.3d 1079, 1089 (11th Cir. 2004).

ruled that "[t]he fact [the decision maker] advertised the position as open but then, when faced with three black finalists, decided not to hire any of them and then decided to eliminate the position is definitely enough to raise an inference of discrimination." *Id.* at 1287. The Seventh Circuit similarly concluded that a defendant's decision not to fill an open position, when the collective bargaining agreement would have dictated that the black plaintiff be the one to fill it, satisfied the plaintiff's prima facie case. *Foster v. Tri-Clover, Inc.*, 2 Fed. Appx. 510, 514 (7th Cir. 2001). On the other hand, when applicants both within and outside the protected class were shut out by the decision not to fill the position, the prima facie case was found to be lacking in *Ichile v. City of Chicago*, 1998 WL 565195 at *11 (N.D. Ill. 1998).

The Court gleans from these authorities that the fourth element of a prima facie case for failure to promote may be established when there is evidence that the decision maker decided not to fill the position only after realizing that a member of a protected category would fill the slot. Such circumstances, until and unless explained away by the defendant, make it more likely than not that the decision not to fill the position (and thus not to promote one in a protected category) was made based on impermissible considerations.

The evidence presented by the plaintiff falls within this paradigm. Vera Collins, a PS-6 maintenance support clerk, retired effective December 2000. In late November, the plaintiff called Lehman and asked how he could get Collins' job, and Lehman said he didn't know. The plaintiff also asked for transfer back into maintenance as a PS-3 custodian/laborer if he could not get Collins' job, and Lehman said he had no openings in that category. (Doc. 37, Exhibit 4 at 1-2). On December 3, the plaintiff asked Lehman for a temporary detail to the PS-5 maintenance support clerk position held by Joyce Major during her military leave in early December. (*Id.*, Exhibit 3). This note advised Lehman that the plaintiff was "currently the only one qualified on the promotion eligibility roster for this position." (*Id.*). Sometime before December 13, Major was selected to fill the PS-6 position vacated by Collins, leaving Major's PS-5 position vacant. (Doc. 32 at 4, ¶ 10 & Exhibit 11). On December 13, the plaintiff wrote the postmaster asking to be placed back in maintenance. (Doc. 32, Exhibit 8; Doc. 37, Exhibit 4). On the same date, Lehman notified the union that Major's position would not be filled. (Doc. 32, Exhibit 11). On or before December 20, Lehman announced that he had a custodial vacancy after all; on the same date, the postmaster approved the plaintiff's request for transfer, and he returned to maintenance

as a PS-3 custodian/laborer effective December 30.  (Doc. 32 at 5, ¶ 12 & Exhibit 8 at 1-2; Doc. 37, Exhibit 1 at 1-2).

As noted, the defendant does not dispute that the plaintiff applied for Major's PS-5 position, that he was qualified for the position, and that he was rejected.  The evidence cited above would support a finding that — from the plaintiff's requests to Lehman for transfer, detail and promotion, and his appeal to the postmaster for transfer when Lehman refused — Lehman realized on or before December 13 (when he announced that the position would not be filled) that the plaintiff would or likely would be transferred back into maintenance and that he would then be the only maintenance employee qualified to assume Major's PS-5 position.  The evidence thus supports the plaintiff's ability to establish the fourth element of his prima facie case under the paradigm contemplated by *Alexander* and other cases.  Lehman's denial that there were any PS-3 custodial vacancies for the plaintiff, followed by his unexplained reversal of position once he had formally announced that Major's PS-5 position would not be filled, simply strengthens the inference of discriminatory intent to deprive the plaintiff of a promotion.[10]

### C.  Pretext.

The defendant vaguely offers "hiring constraints" as the legitimate, nondiscriminatory reason for not promoting the plaintiff.  (Doc. 32 at 19).  The defendant offers no evidence in support of this explanation other than Lehman's terse letter to the union dated December 13. That letter clarifies that Major's position would not be filled "until District consents to let us increase our complement."  (*Id*., Exhibit 11).  That is, the defendant's legitimate, nondiscriminatory reason for not promoting the plaintiff is that the allotted complement was exhausted, so that there was no available position into which he could be promoted.

The plaintiff does not dispute that the defendant has met his burden of producing

---

[10]It may be that Lehman made the decision not to fill Major's position before December 13 and even before the plaintiff first contacted him about coming back to maintenance in late November.  Such facts might well preclude the plaintiff from establishing his prima facie case under the formulation relied upon in text, but the defendant has offered no evidence that Lehman made his decision at any time before he communicated it to the union on December 13.  On the contrary, the defendant has relied on Lehman's affidavit during the internal EEO investigation, in which he indicates the decision was in fact made on December 13.  (Doc. 32, Exhibit 2 at 12).

evidence of a legitimate, nondiscriminatory reason for the failure to promote him.  Instead, he argues that the defendant's articulated reason is false because the allotted complement was not exhausted.

There is evidence that at all relevant times the applicable complement consisted of three maintenance support clerks, including two at PS-5 and one at PS-6.  (Doc. 37, Exhibit 10; *id*., Exhibit 7 at 6-7).[11]  For purposes of examining whether the defendant's articulated reason for not promoting the plaintiff is false, the issue is thus whether there is evidence from which a jury could reasonably conclude that this complement was not exhausted when Major was promoted from one of the PS-5 positions into the PS-6 position.

The defendant has not offered to explain how it could be that Major's promotion from an existing PS-5 maintenance support clerk position that was part of a complement of three could nevertheless leave the complement exhausted.  The plaintiff generously suggests two possibilities: (1) that the third position in the complement was taken by Kearse; and (2) that the defendant "reverted," or inactivated, the position vacated by Major.  The Court examines these possibilities in turn.

Kearse, an employee in another craft, was injured on the job.  There is evidence that, effective November 18, 2000,  he was assigned a rehab position as a maintenance support clerk (albeit with modified duties to fit his residual abilities and without taking or passing the tests required to qualify as a maintenance support clerk).  (Doc. 32, Exhibit 5 at 214-16; *id*., Exhibit 9).  There is also evidence, however, that Kearse's position constituted an additional, fourth position and not the filling of one of the existing three positions.  First, when Kearse's assignment became effective on November 18, 2000, the three allotted positions in the complement were all filled by other persons, suggesting that Kearse did not fill a position within the complement.  (Doc. 37, Exhibit 7 at 7).[12]  This inference is strengthened by the collective bargaining agreement, which suggests that the only alternative to creating a new position for an

---

[11]The defendant has objected to much of plaintiff's Exhibit 7 (the affidavit of Elijah Mack Daniels), but not to the portions relied upon herein.

[12]This is also true today, even though the complement of three has not changed: those positions are filled, and Kearse is still in his position.  (Doc. 37, Exhibit 7 at 7).

injured employee  is "reassignment to an existing vacancy."  (Doc. 37, Exhibit 9 at 76).  Since there was no existing vacancy in the complement of three as of November 18, 2000, the collective bargaining agreement suggests that an additional position must have been created to accommodate Kearse.  Finally, the defendant himself describes Kearse's post as a "newly created rehabilitation position."  (Doc. 32 at 19).

As noted, a vacant position such as Major's can be reverted, or inactivated, by the defendant.  The collective bargaining agreement specifies that, "[i]f the vacant assignment is reverted, a notice shall be posted within 10 days advising of the action taken and the reasons therefor."  (Doc. 37, Exhibit 9 at 206).  Lehman's letter of December 13, 2000 did not advise that Major's position had been or was being reverted, but simply stated it was not being filled, so it does not appear to constitute the posting envisioned by the collective bargaining agreement. More compelling is a document entitled "Job Slots Display," which announces that the maintenance support clerk position vacated by Major in December 2000 was "reverted effective: 2002 02 26."  (Doc. 37, Exhibit 7, Attachment 1).  This document, which is neither challenged nor even acknowledged by the defendant, stands as strong evidence that Major's position was not reverted in or around December 2000.

In summary, the defendant has proffered a single, narrow reason for not promoting the plaintiff, who has presented evidence sufficient to allow the jury to find that the defendant's reason is false.  "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."  *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 148 (2000).  *Reeves* supplants the pre-existing Eleventh Circuit rule that a plaintiff must always survive summary judgment if he "presents a prima facie case as well as plausible evidence that would permit a jury to disbelieve the employer's stated legitimate, nondiscriminatory reasons."  *Bogle v. Orange County Board of County Commissioners*, 162 F.3d 653, 658 n.6 (11th Cir. 1998).  Even after *Reeves*, however, "in the *usual* case, rejection of the reasons offered by the defendant, combined with the evidence supporting the prima facie case, will *permit* the trier of fact to infer the ultimate fact of intentional discrimination."  *Ledbetter v. Goodyear Tire & Rubber Co.*, 421 F.3d 1169, 1185-86 (11th Cir. 2005)(emphasis in original) (internal quotes omitted).

-12-

The defendant does not argue that this is the unusual case in which the plaintiff's prima facie case, plus his evidence that the defendant proffered a false reason for the alleged action, is insufficient to defeat summary judgment, and the Court will not undertake such a subtle inquiry unilaterally on the defendant's behalf.  On the evidence and argument presented, the defendant is not entitled to summary judgment.[13]

## II.  Failure to Assign Overtime.

In an affidavit prepared during the internal EEO investigation, the plaintiff limited this claim to four pay periods between February and July 2002, totaling eight hours of overtime. (Doc. 32, Exhibit 3 at 19).  The defendant presents three arguments: (1) the plaintiff abandoned this claim by failing to address it in his brief in opposition to the defendant's motion for summary judgment; (2) the plaintiff waived this claim by settling his grievance; and (3) the plaintiff has no evidence of pretext with which to counter the defendant's legitimate, nondiscriminatory reason.  (Doc. 32 at 20; Doc. 41 at 7-8).  The Court addresses these arguments in turn.

### A.  Abandonment.

Because Federal Rule of Civil Procedure 56(c) specifies that summary judgment may be entered only when the record evidence shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law, "the district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed but, rather, must consider the merits of the motion."  *United States v. One Piece of Real Property*, 363 F.3d 1099, 1101 (11th Cir. 2004).  The quoted statement constitutes a holding.  *Trustees of Central Pension*

---

[13]The plaintiff should not draw unwarranted comfort from this ruling.  At trial, he will have to explain, for example, why Lehman would refuse to promote him based on his sex, age and/or national origin when, barely a year earlier, Lehman interviewed the plaintiff for a job (and so presumably knew his sex, ethnicity and approximate age), participated in the decision to hire him, and even (according to the plaintiff) promised him a promotion to maintenance support clerk when a position became available.  (Doc. 37, Exhibit 2 at 148-49).   He will also have to explain why Lehman, a male slightly older than himself, (Doc. 40, Exhibit A at 7), would discriminate against him based on sex or age.

*Fund v. Wolf Crane Service, Inc.*, 374 F.3d 1035, 1039 (11ᵗʰ Cir. 2004). This rule does not allow a district court to enter summary judgment in favor of the defendant as to any claim presented in the complaint merely because the plaintiff has not opposed the defendant's motion for summary judgment as to that claim.

The defendant does not recognize this principle. Instead, he relies on *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.*, 10 F.3d 1563 (11ᵗʰ Cir. 1994). In that case, the plaintiff union sued the defendant to require arbitration, alleging that the defendant was "an alter ego and/or a successor" of the entity with which the union had previously reached an agreement requiring arbitration of disputes. *Id.* at 1565-66. The parties submitted cross-motions for summary judgment on stipulated facts, and the district court ruled for the union, concluding that the defendant, under principles of labor law, was the "successor" to the entity with which the union had reached agreement. *Id.* at 1566. On motion for summary judgment, the union limited its argument to the defendant's successor status and did not argue that the defendant was the alter ego of the contracting entity and did not respond to the defendant's briefing which insisted that it was not an alter ego. *Id.* at 1568. The district court accordingly declined to consider the issue. *Id.*

On appeal, the Eleventh Circuit reversed the trial court with respect to the successor issue. The Court then noted that the union had not appealed the lower court's failure to address its alternate, alter ego theory. 10 F.3d at 1568. "The district court's refusal [to consider the alter ego theory] could not, therefore, be considered as an issue on appeal." *Id.* The Court nevertheless also noted that the trial court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment." *Id.* It is on this single sentence that the defendant stakes his argument that the plaintiff has abandoned his overtime claim.

*Road Sprinkler* will not carry the weight the defendant assigns it. Factually, *Road Sprinkler* involves the situation in which the parties file competing motions for summary judgment on stipulated facts, such that only legal issues are left for consideration. More importantly, it involves the situation in which the plaintiff fails to argue a particular *theory* in

-14-

support of a claim for relief.[14]  To the extent *Road Sprinkler* can be read as broadly as the

defendant desires, it is not a holding binding in later decisions:  because there was no issue on

appeal as to the propriety of the trial court's failure to consider the alter ego theory, anything the

appellate court said about the propriety of that failure was necessarily dicta.[15]

Because *One Piece of Real Property* represents a holding binding in the situation

presented herein while *Road Sprinkler* does not, the Court will follow the former ruling.  Under

-------------------------------------------------------------------------------

[14]The plaintiff pursued only one claim for relief — that the defendant be required to arbitrate under an agreement to which he was not a signatory.  "Alter ego" was not a claim for relief but one of two theories presented in the complaint for holding the defendant to that agreement.

The Federal Circuit has described the quoted language from *Road Sprinkler* as "perhaps unfortunate and misleading," since a literal reading of "claim" would require the nonsensical result that a plaintiff who moves for summary judgment on some claims but not others (even if the others obviously encompass genuine issues of material fact that would preclude summary judgment) would be deemed to have abandoned the latter claims.  "That cannot be what the Eleventh Circuit meant."  *Brasseler U.S.A. v. Stryker Sales Corp.*, 182 F.3d 888, 892 (Fed. Cir. 1999).

*Road Sprinkler* may best be understood as an alternate expression of the pre-*Road Sprinkler* commonplace — already quoted by the Court in this opinion — that "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."  *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d at 599 (citing *Blue Cross & Blue Shield v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990)).  Indeed, this is precisely how the *Dunmar* Court viewed *Road Sprinkler*.  *See id.* ("Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.")(citing *Road Sprinkler*).

[15]Nor has any later Eleventh Circuit case citing this portion of *Road Sprinkler* extended it to the situation in which a plaintiff fails to respond to a defendant's motion for summary judgment as to a particular claim.  *See United States v. Kafleur*, 2006 WL 227584 at *5 (11th Cir. 2006)(defendant's failure to argue affirmative defenses of estoppel and assumption of the risk in opposition to plaintiff's motion for summary judgment); *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1325-26 (11th Cir. 2000)(plaintiff's failure to argue at trial that ordinance violated state constitution); *Nance v. Maxwell Federal Credit Union*, 186 F.3d 1338, 1340 & n.2 (11th Cir. 1999)(plaintiff's failure to pursue declaratory or injunctive relief at trial); *Lyes v. City of Riviera Beach*, 126 F.3d 1380, 1388 (11th Cir. 1997)(plaintiff adequately alerted defendant and trial court as to her equal protection theory), *vacated*, 136 F.3d 1295 (11th Cir. 1998), *reinstated in pertinent part*, 166 F.3d 1332, 1336 (11th Cir. 1999)(en banc); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d at 599 (plaintiff's failure to argue that one of its claims was not captured by the *D'Oench, Duhme* doctrine urged by defendant on motion for summary judgment).

-15-

that doctrine, the Court's review when the plaintiff does not respond to a motion for summary judgment is less searching than when he does respond.  "The district court need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials. [citation omitted] At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment."  363 F.3d at 1101.  Should this review reveal the defendant's entitlement to summary judgment as to his overtime claim, under *Road Sprinkler* and *Dunmar* the Court will not consider any legal or factual arguments the plaintiff could have, but has not, asserted in opposition.[16]

### B.  Waiver by Settlement.

To show that the plaintiff settled his claim of being bypassed for overtime, the defendant relies on a document entitled "Grievance Settlement/Withdrawal."  (Doc. 32, Exhibit 3, part 2 at 22).  The difficulty is that this document nowhere describes the basis of the plaintiff's grievance, so it is impossible from this document alone to conclude that the settled grievance and the plaintiff's current claim are the same.

"When an employee knowingly and voluntarily releases an employer from liability for Title VII and § 1981 claims with a full understanding of the terms of the agreement, he is bound by that agreement."  *Puentes v. United Parcel Service, Inc*., 86 F.3d 196, 198 (11th Cir. 1996).  However, the waiver of such remedial rights must be closely scrutinized.  *Id*.  This determination requires a consideration of the "totality of the circumstances," including:  the plaintiff's education and business experience; the amount of time the plaintiff considered the agreement before signing; the clarity of the agreement; the plaintiff's opportunity to consult with an attorney, and the employer's encouragement or discouragement to do so; and the consideration

---

[16]This procedure will be followed with respect to the other claims that the defendant argues have been abandoned by failure to respond.  It is worth noting that, with respect to at least some of these claims, the defendant's minor premise — that the plaintiff "has failed to provide any argument in response to Defendant's motion for summary judgment," (Doc. 41 at 7) — appears plainly wrong.  (Doc. 36 at 6-7, 9, 10-12).

given in comparison with the benefits to which the employee was already entitled. *Id.*[17]

The Court has found no Eleventh Circuit case specifying which party bears the burden of proving the waiver was knowing and voluntary. However, because waiver is by its very nature an affirmative defense,[18] the Court concludes that the defendant bears this burden. Because the defendant has expended no effort and presented no evidence to show that the waiver was knowing and voluntary, he has not met his initial burden on motion for summary judgment as to that affirmative defense.

### C. Pretext.

The defendant has presented admissible evidence that the plaintiff was bypassed for overtime due to a group leader's mistake. (Doc. 32, Exhibit 3, part 2 at 14). Because the plaintiff bears the burden of showing that this reason is a pretext for unlawful discrimination, his failure to respond is fatal to his claim.

### III. Failure to Detail to Maintenance Support Clerk.

According to the plaintiff, on three specific occasions after he returned to the maintenance department as a custodian/laborer, PS-6 Major was detailed to a supervisory position and PS-5 Letitia Taylor was detailed to Major's PS-6 position. On each occasion, the plaintiff requested detail to Taylor's PS-5 position, and each time he was denied. (Doc. 32, Exhibit 3, part 2 at 6-7; *id.*, Exhibit 5 at 250-51). The defendant argues that the plaintiff cannot establish a prima facie case and has no evidence of pretext with which to counter the defendant's legitimate, nondiscriminatory reason. (Doc. 32 at 21).

The defendant has presented admissible evidence that the plaintiff was not detailed

---

[17]The requirements for a valid waiver of the plaintiff's claims under the ADEA are even more strict, *see* 29 U.S.C. § 626(f), and they patently are not satisfied by the settlement agreement's generic language.

[18]*E.g., Weaver v. Florida Power & Light Co.*, 172 F.2d 771, 774 (11th Cir. 1999) ("Res judicata and waiver are affirmative defenses, *see* Fed. R. Civ. P. 8(c), which, by definition, are raised for the purpose of avoiding claims made by another party."). Unsurprisingly, the defendant listed waiver as an affirmative defense in his answer. (Doc. 7 at 3).

because "[w]e needed custodians more than we needed Maintenance Support Clerks." (Doc. 32, Exhibit 3 part 2 at 15). Because the plaintiff bears the burden of showing that this reason is a pretext for unlawful discrimination, his failure to respond is fatal to his claim.

## IV. Failure to Detail as Acting Supervisor.

According to the defendant, two supervisors took a week of annual leave in May 2002, and Lehman instructed them to find and train their own replacements. (Doc. 32 at 22). The plaintiff complains that he should have been selected. The defendant responds that the plaintiff cannot establish a prima facie case and has no evidence of pretext with which to counter the defendant's legitimate, nondiscriminatory reason. (*Id*. at 22).

### A. Prima Facie Case.

The defendant argues that the plaintiff cannot establish a prima facie case because he did not apply for these details. A formal application, however, is not always required. "[A] plaintiff makes out a prima facie case ... as long as he establishes that the company had some reason or duty to consider him for the post." *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1133 (11th Cir. 1984). In particular, "when an employer uses such informal methods [to disseminate information about openings] it has a duty to consider all those who might reasonably be interested in the available position." *Walker v. Prudential Property & Casualty Insurance Co.*, 286 F.3d 1270, 1275-76 (11th Cir. 2002)(internal quotes omitted). Here, the defendant's own filings reflect that "[t]here was no notice posted or circulated advising of the upcoming vacancies." (Doc. 32, Exhibit 3, part 1 at 15; Doc. 37, Exhibit 1 at 2). Moreover, the defendant admits that the plaintiff formally applied for detail as a supervisor in August 2001, (Doc. 32 at 22), and the plaintiff's evidence reflects that this application was still considered current at least as of January or February 2002. (*Id*., Exhibit 3, part 1 at 16). Absent persuasive argument from the defendant, which is not forthcoming, the Court cannot conclude that the plaintiff's failure to formally apply for the specific details at issue is fatal to his prima facie case.

### B. Pretext.

The defendant does not articulate any legitimate, nondiscriminatory reason for not

selecting the plaintiff for these details.  Instead, he simply notes that the plaintiff concedes the possibility that one of the selectees could have been viewed as better fitted for the job.  (Doc. 32 at 22; *id.*, Exhibit 5 at 250).[19]  This is legally inadequate to meet his burden.

"The defendant cannot testify in abstract terms as to what *might* have motivated the decision-maker; it must present specific evidence regarding the decision-maker's *actual* motivations with regard to each challenged employment decision."  *Walker v. Mortham*, 158 F.3d 1177, 1181 n.8 (11th Cir. 1998)(emphasis added).  "Moreover, this Court has squarely held that an employer may not satisfy its burden of production by offering a justification which the employer either did not know or did not consider at the time the decision was made."  *Turnes v. AmSouth Bank*, 36 F.3d 1057, 1061 (11th Cir. 1994).  The plaintiff's concession that a decision maker could have viewed a selectee as more qualified is not evidence that the decision maker so viewed the selectee, nor is it evidence that the decision maker actually relied on relative qualifications in reaching his decision.  Moreover, a defendant relying on relative qualifications must present evidence that the decision maker was aware of those qualifications when the employment decision was made, *Walker v. Mortham*, 158 F.3d at 1181 n.8, and the defendant has not shown or even suggested that the decision makers here were so aware.[20]

Because the defendant did carry his intermediate burden of producing evidence of a legitimate, nondiscriminatory reason for the failure to detail the plaintiff, the burden of showing that reason to be a pretext for unlawful discrimination never passed to the plaintiff.

## V.  Failure to Equitably Distribute Custodial Work Assignments.

The plaintiff complains that he was required to perform less desirable maintenance jobs than other custodial employees, including summer outside work, floor buffing, recycling,

---

[19]He also defends Lehman's decision to let the supervisors select their own replacements, (*id.*), but the decisions at issue are those of the supervisors not to select the plaintiff as a replacement.

[20]Even had the defendant presented evidence that the plaintiff was not selected based on relative qualifications, that alone would be insufficient to carry his burden of production without "articulat[ing] specific reasons," such as seniority, training and experience, for considering the plaintiff less qualified.  *Steger v. General Electric Co.*, 318 F.3d 1066, 1075 (11th Cir. 2003).

baseboard cleaning, work case cleaning, and odds-and-ends work.  (Doc. 37, Exhibit 1 at 2).
The defendant raises the following arguments: (1) the plaintiff did not experience an adverse
employment action; (2) he has no evidence that similarly situated persons outside his protected
categories were treated more favorably; and (3) he has no evidence that the defendant acted with
discriminatory animus.  (Doc. 32 at 23-24).  The first is adequate to dispose of the claim.

"[A]dverse employment action is an indispensable element of a Title VII plaintiff's
case."  *Davis v. Town of Lake Park*, 245 F.3d 1232, 1246 (11th Cir. 2001).  "We ... hold that, to
prove adverse employment action in a case under Title VII's anti-discrimination clause, an
employee must show a *serious and material* change in the terms, conditions, or privileges of
employment."  *Id*. at 1239 (emphasis in original).  Because "[w]ork assignment claims strike at
the very heart of an employer's business judgment and expertise because they challenge an
employer's ability to allocate its assets in response to shifting and competing market priorities, ...
applying the adverse action requirement carefully is especially important when the plaintiff's
claim is predicated on his disagreement with his employer's reassignment of job tasks."  *Id*. at
1244.  "In the vast majority of instances, ... we think an employee alleging loss of prestige on
account of a change in work assignments, without any tangible harm, will be outside the
protection afforded by Congress in Title VII's anti-discrimination clause ...."  *Id*. at 1245.  The
"unusual" exception must involve a change in duties "so substantial and material" as to alter the
terms and conditions of employment.  *Id*.

The plaintiff does not allege that his work assignments changed, but he does allege that,
throughout his employment as a custodian, he was required to perform jobs that were "less
desirable because you had to be outside, do a lot of bending, and [be] subjected to a lot of dust."
(Doc. 37, Exhibit 1 at 2).  The Court concludes that *Davis* authorizes a work assignment claim
based not on a change in the plaintiff's work assignments but on the disparity between the
plaintiff's assignments and those of others in the same job; otherwise, an employer could
discriminate in work assignments with impunity simply by doing so from the first day of the
plaintiff's employment.  The issue becomes whether there is evidence that the difference
between the plaintiff's work assignments and those of other custodians was "so substantial and
material" as to constitute an adverse employment action.

The plaintiff, however, has presented no evidence that could form the basis of a

comparison between his assignments and those of other custodians. While he alleges that only he performed the tasks listed above, he identifies neither the other tasks assigned to him nor the tasks assigned other custodians, rendering it impossible to determine whether the plaintiff's duties were substantially more onerous, unpleasant or otherwise undesirable. It may be assumed from his affidavit that the tasks assigned the other custodians did not involve outside work or lots of bending or exposure to dust, but it cannot be assumed that they did not involve other, compensating dangers, stresses and inconveniences that the plaintiff's assignments lacked. Nor can it be assumed that the tasks the plaintiff found objectionable occupied more than a nominal fraction of his time. Under these circumstances, the plaintiff has failed to present a jury issue as to whether he experienced an adverse employment action.

## VI. Failure to Detail as Postal Systems Coordinator.

The plaintiff alleges that a white female received this detail in July 2002. (Doc. 32, Exhibit 3, part 2 at 9; Doc. 37, Exhibit 1 at 3). The defendant argues that: (1) the plaintiff did not apply for the detail; and (2) he has no evidence of pretext. (Doc. 32 at 24). As discussed below, neither argument suffices.

As discussed in Part IV.A, an application is not required if the defendant relied on informal methods of advertising openings and knew or reasonably should have known that the plaintiff might reasonably be interested in the position. Here, the defendant's own cited evidence reflects that the opening was not posted or otherwise announced, (Doc. 32, Exhibit 3, part 2 at 9), and, as discussed in Part IV.A, the plaintiff's previous formal application for detail as a supervisor gave the defendant reason to know the plaintiff might reasonably be interested in other such details.

As for pretext, the defendant's only articulated legitimate, nondiscriminatory reason for not detailing the plaintiff is that the decision maker "had no knowledge of the person or his interest." (Doc. 32 at 24). However, when an employer relies on informal means of attracting candidates and "has reason to know that an employee is qualified for a position and that the employee might desire to be considered for that position, the employer's failure to consider the employee ... is not a legitimate, nondiscriminatory reason sufficient to rebut an inference of intentional disparate treatment successfully raised under [the prima facie case aspect of] the

*McDonell Douglas* test." *Roberts v. Gadsden Memorial Hospital*, 835 F.2d 793, 798 (11th Cir.), *modified in unrelated aspects*, 850 F.2d 1549 (11th Cir. 1988).   As discussed in Part IV.A, there is evidence unaddressed by the defendant from which it may be concluded that the defendant had reason to know that the plaintiff might be interested in the position.   Because the defendant has not met his intermediate burden, he failed to shift to the plaintiff the burden of showing pretext.

## VII.  Failure to Detail to Maintenance Positions.

This claim is based on the plaintiff's third internal complaint.  (Doc. 1, ¶ 10).  The defendant argues that: (1) the claim is almost completely time-barred; (2) the plaintiff cannot establish a prima facie case; and (3) he has no evidence of pretext.  (Doc. 32 at 24-25).

### A.  Timeliness.

The plaintiff's third internal complaint was preceded by initial contact with an EEO counselor on January 17, 2003.  (Doc. 32, Exhibit 4 at 5).  Therefore, as discussed in Part I.A, the plaintiff's claim is presumptively time-barred with respect to any failure to detail occurring more than 45 days earlier, or before December 4, 2002 (unless captured by an earlier internal complaint).  The only alleged failure to detail identified by the plaintiff with respect to this claim occurred on January 16, 2003.  (*Id.*).  The plaintiff's claim, so limited, is timely.

### B.  Prima Facie Case.

The defendant first suggests that the plaintiff's concession that "it could be a completely reasonable and rational business decision not to fill the position" proves that the plaintiff cannot establish a prima facie case.  (Doc. 32 at 25).  The prima facie case, of course, does not require the plaintiff to deny the possibility of a nondiscriminatory reason for the adverse action.

The defendant also argues that the plaintiff admits he knows of no employee treated more favorably.  (Doc. 32 at 25).  This statement, however, was made by the plaintiff in October 2002, (Doc. 32, Exhibit 3, part 2 at 8), several months before the detail in issue even occurred. Moreover, and as discussed in Part I.B, there are multiple variations on the prima facie case, and the defendant has not addressed any of them.

### C. Pretext.

The defendant has presented evidence of a legitimate, nondiscriminatory reason — that custodians were needed more than maintenance supply clerks.  (Doc. 32 at 25).  Unfortunately, the evidence upon which he relies is an affidavit from Lehman which is dated November 2002, (Doc. 40, Exhibit A at 6-7), and which therefore does not address the circumstances of the January 2003 detail.  Because the defendant has once again failed to meet his intermediate burden of production, no burden passed to the plaintiff to demonstrate a genuine issue of material fact as to pretext.

### VIII. Continued Failure to Assign Overtime.

This claim as well stems from the plaintiff's third internal complaint.  (Doc. 1, ¶ 10).  The defendant points out that the plaintiff has not identified any denial of overtime in connection with this claim, (Doc. 32 at 24-25), and the plaintiff has not responded by identifying any such denial.  For lack of an adverse employment action, this claim is due to be dismissed.

### IX. Harassment.

The complaint alleges that the plaintiff  "was harassed by the defendants, their agents or employees."  (Doc. 1, ¶ 10).  The defendant did not address this claim in his motion or briefs and so has necessarily failed to show entitlement to summary judgment.[21]

### X. Prohibition on Unapproved Communication with Shop Steward.

In discovery and again in opposition to motion for summary judgment, the plaintiff asserts that he was retaliated against for filing his first two internal complaints by being told by Lehman he "would be required to get permission from my Supervisor in order to speak to the Shop Steward regarding any complaints I might have."  (Doc. 37, Exhibit 1 at 3; Doc. 36 at 7, ¶ 35; *id*. at 9; Doc. 41, Exhibit 18 at 259-60).  The allegation appears to exceed the scope of the

---

[21]The judicial complaint alleges that this claim was asserted in the plaintiff's second internal complaint, (*id*.), but the record from that complaint suggests otherwise.  (Doc. 32, Exhibit 3, part 1 at 1).  That would of course leave the claim vulnerable to dismissal on grounds of untimeliness and/or failure to exhaust administrative remedies.

complaint, (Doc. 1, ¶ 10), but the defendant ignores this argument and instead anticipates the plaintiff's assertion by denying that the instruction constitutes an adverse employment action. (Doc. 32 at 26).

To constitute an adverse employment action, "the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment." *Davis v. Town of Lake Park*, 232 F.3d at 1239. "Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id*. at 1239-40. The test is stringent, and this year alone the Eleventh Circuit has refused to find an adverse employment action at least six times.[22]

The allegation in this case, however, is different in kind from those involved in the cases cited by the defendant and reviewed by the Court. At issue is not a minor tinkering with an employee's work environment or the employer's assessment of his performance but a command to an employee not to communicate with his union representative — even about a perceived violation of federal employment discrimination laws— without permission from his supervisor. Absent more pointed argument and authority, the Court is unwilling to resolve at the summary judgment stage whether the alleged instruction constitutes an adverse employment action.

In his reply brief, the defendant raises additional challenges but, as discussed in Part I.A, these come too late to be considered by the Court on motion for summary judgment. Nor does it appear that his arguments would prevail were the Court to reach them. First, the defendant complains that the plaintiff's allegation of what he was instructed is "uncorroborated" by others. (Doc. 41 at 6-7). Corroboration, of course, is not a predicate to the consideration of evidence.

Second, he notes that the plaintiff has not alleged that others were treated differently.

---

[22]*See Filius v. Potter*, 2006 WL 679016 at *1 (11th Cir. 2006) (document discussing the use of government property); *Brown v. Snow*, 2006 WL 431721 (11th Cir. 2006)(lowered score on performance evaluation); *Summerlin v. M&H Valve Co.*, 2006 WL 93131 at *3 (11th Cir. 2006)(formal written reprimand); *Apodaca v. Secretary of Department of Homeland Security*, 161 Fed. Appx. 897, 899-901 (11th Cir. 2006)(disappointing performance evaluations); *Cotton v. Cracker Barrel Old Country Store, Inc*., 434 F.3d 1227, 1234 (11th Cir. 2006)(failure to conduct evaluation); *Weston-Brown v. Bank of America Corp*., 2006 WL 14583 at *4 (11th Cir. 2006) (failure to select for new position at same employment level).

(Doc. 41 at 7).  It is true that "[w]hen an employer applies its standard policies in a nondiscriminatory manner, its action is not objectively adverse," *Cotton v. Cracker Barrel Old Country Stores, Inc.*, 434 F.3d 1227, 1234 (11th Cir. 2006), but the defendant has not attempted to show by record evidence that it has a standard policy of refusing all its unionized employees permission to speak to their shop steward without a supervisor's permission.

Third, the defendant articulates as its legitimate, nondiscriminatory reason for the instruction that the collective bargaining agreement requires it.  (Doc. 47 at 12-13).  The problem (beyond the absence of evidence that Lehman relied on the collective bargaining agreement in issuing the instruction) is that the document does not express any such requirement.  The first section on which the defendant relies says only that when an employee first raises a grievance he must raise it with his supervisor and may be accompanied by the shop steward when he does so. (Doc. 37, Exhibit 9 at 97-98).  Nothing in this provision remotely requires the employee to ask his supervisor if he may speak with his shop steward so that he may bring a grievance.

The only other section cited by the defendant requires only that the shop steward, if he wishes to investigate or adjust a grievance or potential grievance outside his work area, must request and obtain permission from his supervisor and the supervisor of the other work area. (Doc. 37, Exhibit 9 at 123-24).  This section imposes no such responsibility on grievants.  Even if a similar requirement pertaining to all employees with complaints could be implied from this provision, by its terms the requirement would be limited to communications requiring departure from the employee's work area during work hours, and Lehman's alleged instruction to the plaintiff — a prophylactic prohibition on speaking to the shop steward without permission — contained no such qualifier.

## XI.  Other Matters.

The defendant argues that the plaintiff did not properly challenge the defendant's proposed determinations of uncontroverted fact pursuant to local rule, resulting in his admission that those facts are true.  (Doc. 41 at 11-12).  Each of the thirty numbered paragraphs in that document is either irrelevant to the motion, is rendered inconsequential to it by the evidence relied upon by the plaintiff and the inferences arising therefrom, or is not supported by the evidence on which the defendant relies.

-25-

In his brief, the defendant suggests that the plaintiff is not entitled to a jury trial under the ADEA or to punitive damages, and he questions the strength of the plaintiff's evidence of compensatory damages. (Doc. 32 at 2, 27-28). The defendant does not, however, move for summary judgment as to any of these matters, but only "requests that Plaintiff's Complaint be dismissed with prejudice." (*Id*. at 28). Absent a motion for relief, the Court will not consider these matters. *See* Fed. R. Civ. P. 7(b)(1)("An application to the court for an order shall be by motion ....").

The defendant filed only excerpts of several affidavits, omitting not only portions of the text but, in some cases, the signature and even the name of the affiant. (Doc. 32, Exhibit 3, part 2). When the plaintiff objected, (Doc. 39), the defendant filed a motion for leave to file the complete version of the affidavits. (Doc. 40). That motion is **granted**.

The defendant filed a motion to strike the affidavit of Elijah Mack Daniels. (Doc. 42). As the Court has not relied on any portion of that affidavit to which the defendant objected, the motion to strike is **denied as moot**.

## CONCLUSION

For the reasons set forth above, the defendant's motion for summary judgment is **granted** with respect to the plaintiff's two claims for denial of overtime (see Parts II, VIII); **granted** with respect to his claim for denial of detail to maintenance support clerk (see Part III); and **granted** with respect to his claim for inequitable distribution of custodial work assignments (see Part V). In all other respects, the motion for summary judgment is **denied**.

DONE and ORDERED this 7th day of April, 2006.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE